IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RODNEY HILL,               )
                           )
         Plaintiff,        )
                           )
   -vs-                    )     Civil Action No. 13-195J
                           )
CAROLYN W. COLVIN,         )
COMMISSIONER OF SOCIAL SECURITY, )
                           )
         Defendant.        )

AMBROSE, Senior District Judge.

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 13 and 16). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 8 and 10). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting the Defendant's Motion for Summary Judgment (Docket No. 16) and denying the Plaintiff's Motion for Summary Judgment (Docket No. 13).

### I. BACKGROUND

Hill suffered a work-related injury on April 21, 2008 to his head, neck and back. He contends that it has led to ongoing problems ever since which include chronic neck and back pain and post-concussion syndrome. He has not engaged in substantial gainful employment since the date of the accident. Accordingly he filed an application for disability insurance benefits on October 4, 2010, claiming an onset date of April 21, 2008, later amended to December 1, 2009.[1] (R. 171). An Administrative Law Judge ("ALJ") held a hearing on January

---

[1] Hill's earning records indicate that he has acquired sufficient quarters of coverage to remain insured through June

1

19, 2012 and subsequently issued an unfavorable decision. Hill then filed an appeal with the Appeals Council. That appeal was denied and Hill timely filed an appeal with this Court.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 13 and 16). The issues are now ripe for review.

## II. **LEGAL ANALYSIS**

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use

30, 2014.

when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### A. Discussion

Hill argues that: (1) the ALJ erred in assessing his residual functional capacity; and (2) the ALJ erred with respect to his credibility findings regarding subjective complaints of pain.

#### 1) Hill's Residual Functional Capacity[2]

In determining whether a claimant can return to past relevant work or perform any other work an ALJ must assess a claimant's residual functional capacity. Hill contends that the ALJ

---

[2] RFC refers to the most a claimant can still do despite his/her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions and the individual's subjective allegations and description of his/her own limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

3

"failed to create an accurate RFC that incorporated all of Plaintiff's limitations," and that the corresponding hypothetical similarly failed to accurately reflect those limitations. *ECF Docket No.* [15], p. 12. He urges that the ALJ's RFC assessment is not supported by substantial evidence and that the hypothetical was erroneous. After careful consideration, I disagree.

Here, the ALJ had determined that Hill was capable of performing work at the light exertional level, provided that he have a sit/stand option during the work day, 1-2 minutes, every hour or so. He further limited Hill to jobs that do not require bilateral visual acuity and simple, routine, repetitive tasks not performed in a fast-paced production environment, involving only simple, work-related decisions and in general, relatively few workplaces changes. He also limited Hill to jobs involving 1-2 step tasks learned by demonstration. (R. 25).

Substantial evidence of record supports the ALJ's findings in this regard. For instance, Hill testified that he drives a car (R. 40), mows his lawn (R. 51), loads the dishwasher (R. 51), and vacuums (R. 51). Additionally, with respect to Hill's complaints of knee pain, Dr. Pedone's notation of 9/14/10 states that an "AP of both knees and a lateral of the right knee done on September 10, 2010, erect at Blair Orthopedics show no fracture or dislocation. There is no significant degenerative change noted. Sunrise views bilaterally show very mild lateral tilt of both patellae at the patellaofemoral articulation but are within normal limits." (R. 279). Indeed, the reports note that Hill himself acknowledged "vast improvement" in his knee problems. (R. 281).

Furthermore, following Hill's initial fall, he was treated at Altoona Regional Hospital. X-rays of the thoracic and cervical spine were generally normal. (R. 269-70). He received a primary diagnosis of a "thoracic and lumbar sprain" and an additional diagnosis of "contusion buttock [and] left wrist sprain." (R. 260). There was normal range of motion of the neck and paraspinal tenderness in the mid-back and lower back. (R. 261). A CT of the head revealed a "[q]uestionable tiny scalp hematoma in the left upper occipital region … [with] no evidence of

shear injuries, hemorrhage, subdural or epidural collections of fluid [and] [n]o abnormalities intracranially." (R. 271). Hill rated his pain as a "3" on a scale of 0-10, did not appear to the nurse to be in acute distress, was able to walk unassisted with a steady gate and was discharged the same day to work. (R. 263). Additionally, Hill attended seven physical therapy sessions at Healthsouth but discontinued after December of 2009 due to noncompliance. (R. 241).

During an April 26, 2011 examination, Hill's pain management provider noted that his cervical range of motion was within normal limits and without lesions or deformities. Further, there were no subluxations present. (R. 319). Additionally, he recorded the "paraspinal muscle strength and tone [as] within normal limits." (R. 319). Hill was observed to have a normal mood and appropriate affect. (R. 319). On November 15, 2011, following a series of epidural steroids for pain, Dr. Drass noted that Hill's cervical range of motion was again within normal limits, that there were no lesions or deformities of the cervical spine or subluxations, and that the paraspinal muscle strength and tone was within normal limits. (R. 311). He found no tenderness in either the left or right upper extremity and both had a normal range of motion. (R. 311). Again, Hill's mood was normal and his affect was appropriate. (R. 311).

In a Physical Residual Functional Capacity Assessment, the consultant imposed exertional limits of occasionally lifting or carrying 20 pounds, frequently lifting or carrying 10 pounds, standing or walking about 6 hours in an 8-hour work day and sitting about 6 hours in an 8-hour work day. (R. 282). The doctor did not impose any postural or manipulative limitations. (R. 283-84). The only visual acuity limitation related to "far acuity", which the physician described as "limited." (R. 284).

Pursuant to a Psychiatric Review Technique, a consultant found that Hill had only mild restrictions in the activities of daily living, no difficulties in maintaining social functioning or concentration, persistence or pace. Nor were there any repeated episodes of decompensation,

each of an extended duration. (R. 299) The consultant noted that "[t]he claimant has been diagnosed with depression and treated by his primary care provider. However, he has no history of inpatient or outpatient mental health treatment. A note by his PCP, Joseph D. Clark, M.D. on 9/13/10, describes his mental status as entirely within normal limits. Impairment is not severe. Based on the evidence of record, the claimant's statements are found to be partially credible." (R. 301).

Similarly, office treatment records from Primary Health Network dated April 19, 2011 to November 15, 2011, suggest that Hill presented with "normal" behavior, "coherent" thought process, "normal " cognition, "fair" judgment, "appropriate" affect, "cooperative" attitude, and "able to engage in conversation." (R. 321-342). During one visit Hill scored 28 out of 30 on a mini mental status examination. (R. 326). A score of 24 or better is considered normal. (R. 326).

Hill also presented to Dr. D'Agaro on December 5, 2009, for a neuropsychological consultation. (R. 347-350). With respect to attention, concentration and mental tracking, Dr. D'Agaro noted that Hill was "capable of attending to and immediately recalling auditory stimuli presented over a brief period of time (seconds), but demonstrated mild difficulty with the sustaining of his auditory attention over a more extended period of time (minutes) to process nonverbal stimuli." (R. 349). Dr. D'Agaro described Hill's psychomotor processing speed and visuomotor attention, scanning and sequencing abilities as "mildly impaired" and stated that his ability to "mentally shift and alternate his attention between equally demanding cognitive tasks on a similar task was better but still reflective of borderline difficulty." (R. 349). Dr. D'Agaro found that Hill displayed a "pattern of cognitive dysfunction that includes variable attention and concentration, new learning and memory, and word finding difficulty," and that such difficulty is consistent with the mild traumatic brain injury he sustained as a result of the accident. (R. 349). Dr. D'Agaro recommended counseling and evaluation by a speech-language pathologist as well

as maintaining contact with the Office of Vocational Rehabilitation ("OVR"). (R. 350).

Following the hearing before the ALJ, Hill underwent a psychological consultative examination with Catherin Spayd, Ph.D. (R. 351-361). Dr. Spayd found Hill cooperative and self-sufficient and noted that he was both neat and clean in appearance, had fair eye contact and a pleasant attitude. (R. 355) He demonstrated good social skills and had clear, logical and goal-directed speech. (R. 355) She described Hill as having a "low average level of intelligence." (R. 356). She gave him a Global Assessment of Functioning ("GAF")[3] of 42, with the highest GAF in the past year as 50. (R. 357). She noted him as having "moderate" impairments of the ability to: understand and remember short, simple instructions; carry out short, simple instructions and make judgments on simple work-related decisions. (R. 359). She opined that Hill had "marked" impairments of the ability to: understand and remember detailed instructions and to carry out detailed instructions. (R. 359). In contrast, she found Hill to suffer only "slight" impairments in his ability to: interact appropriately with the public, supervisors and co-workers; and "moderate" impairments in the ability to respond appropriately to work pressures and changes in a usual work setting. (R. 359).

In short, the record is replete with evidence indicating that Hill's physical examinations were relatively normal and that his treatment was conservative. With respect to his mental limitations, the record demonstrates that he could perform activities of daily living, that he had minimal treatment and that he had, at most, some mild to moderate limitations. Substantial evidence of record supports the ALJ's findings regarding Hill's residual functional capacity.

With respect to the hypothetical question, the Third Circuit Court of Appeals instructs that the "hypothetical question must reflect all of a claimant's impairments that are supported by

---

[3] A GAF score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale ranges from the lowest score of 1 to 100, the highest score possible. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, ("DSM-IV TR") 34 (4th ed. 2000).

the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987), *citing, Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984). Indeed, "the hypotheticals posed must 'accurately portray' the claimant's impairments and … the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Johnson v. Comm'r.*, 529 F.3d 198, 206 (3d Cir. 2008), *quoting, Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The ALJ's question posed to the vocational expert accurately reflected all the limitations identified in the residual functional capacity assessment. Specifically, the ALJ posed the following hypothetical:

> Q: Let's assume an individual of the age, education, and work experience of the claimant who would be limited to light work activity, but this individual would be limited to occupations which do not require bilateral far visual acuity, and this individual would be limited to simple, routine, repetitive tasks not performed in a fast paced production environment, involving only simple work-related decisions and, in general, relatively few workplace changes. This individual should work primarily with objects rather than people, and this individual is generally limited to one to two-step tasks learned by demonstration…. Would there be other jobs such an individual could perform? A: Yes, this hypothetical individual could perform some unskilled, light and sedentary occupations.

(R. 65). The vocational expert went on to identify several positions such as fruit cutter, paper pattern folder and nut sorter as positions consistent with those restrictions. (R. 65-66). Because the ALJ's residual functional assessment is supported by substantial evidence, and because the hypothetical question posed to the vocational expert accurately reflected the RFC, the VE's testimony regarding the existence of jobs that Hill could perform within those limitations constitutes substantial evidence supporting the ALJ's determination that Hill was not disabled. *See Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).

        2)        Subjective Complaints of Pain

Hill also contends that the ALJ erred by not according him full credibility with respect to his complaints of pain and other disabling symptoms. As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms;

and second, the ALJ must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R. 26). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reason for rejecting non-medical testimony. *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). I must defer to the ALJ's credibility determinations, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S. Ct. 1133, 43 L.Ed.2d 403 (1975).

In determining the limits on a claimant's capacity for work, the ALJ will consider evidence from the treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. § 404.1529(c)(4).

After my own review of the record, I find that the ALJ followed the proper method to determine Hill's credibility. As laid out in his decision, the ALJ considered the factors set forth above. (R. 26-27). For example, the ALJ found Hill's self-reported activities of daily living to be inconsistent with an individual experiencing totally debilitating symptomatology. (R. 26). As stated above, he cared for his pets, met his own personal needs, mowed the lawn, played guitar, watched television, drove, shopped and read. Medical records also revealed that there was no significant disuse muscle atrophy of the extremities on physical examination, which suggests that Hill moves around on a fairly regular basis despite his allegations of totally debilitating pain. (R. 26). The ALJ noted that the clinical and objective findings also supported his conclusion. There was no indication of significant muscle spasm, motor or sensory loss,

reflex abnormality, reduced range of motion of the spine or extremities, or gait disturbance. (R. 260. Nor was there evidence of disc herniation, spinal stenosis, nerve root impingement, arachnoiditis or other significant degenerative / arthritic abnormality of the spine or extremities to substantiate Hill's allegations of chronic pain. (R. 26-27). Consequently, I find the ALJ's opinion was supported by substantial evidence of record and assign no error to his conclusion in this regard.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RODNEY HILL, )
 )
    Plaintiff, )
 )
 -vs- ) Civil Action No. 13-195J
 )
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
 )
    Defendant. )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

THEREFORE, this 28th day of July, 2014, it is ordered that the decision of the ALJ is affirmed. The Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED and the Plaintiff's Motion for Summary Judgment (Docket No. 13) is DENIED.

                                            BY THE COURT:

                                            s/ Donetta W. Ambrose
                                            Donetta W. Ambrose
                                            United States Senior District Judge